UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X
SERE CONDE,

                              Plaintiff,

      -against-

SISLEY COSMETICS USA, INC.,
SAKS INCORPORATED, and
BHAGVAN DUGRE, *Individually*,

                              Defendants.
-------------------------------------------------------X

**AMENDED COMPLAINT**

Case No.: 11-cv-4010
(RJS)

PLAINTIFF DEMANDS
A TRIAL BY JURY

Plaintiff, SERE CONDE ("CONDE"), by her attorneys, PHILLIPS & PHILLIPS ATTORNEYS AT LAW, PLLC , files this Complaint against Defendants:

### NATURE OF THE CASE

1. Plaintiff CONDE brings this action pursuant to 42 USC Section 1981, and charging that Defendants violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et. Seq. ("Title VII") and the New York City Human Rights Law, Administrative Code § 8-107 et seq. (the "NYCHRL"), seeking to recover lost wages, emotional distress, punitive damages, reasonable attorney's fees and costs as a result of being discriminated against due to her race and national origin, and ultimately terminated in retaliation for complaining of race-based discrimination.

2. **Throughout Plaintiff CONDE's employment, Plaintiff CONDE observed Defendant SISLEY discriminating against numerous Arab customers by specifically targeting them due to their race and national origin and selling them various products at**

**exorbitant prices.**

3. **Plaintiff CONDE was retaliated against when she reported this actively to Defendant BHAGVAN DUGRE.**

## JURISDICTION AND VENUE

4. Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3), 29 U.S.C. § 626(c), and 28 U.S.C. §§ 1331 and 1343.  The Court has supplemental jurisdiction over the claims of Plaintiff brought under state law pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this district, pursuant to 28 U.S.C. §1391(b), based upon Defendants' residency within the County of Westchester, State of New York, within the Southern District of New York.

## PROCEDURAL PREREQUISITES

4. Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission ("EEOC").

5. Plaintiff received a Notice of Right to Sue from the EEOC, dated May 9, 2011, with respect to the herein charges of discrimination.  A copy of the Notice is annexed hereto.

6. This Action is being commenced within 90 days of receipt of said Right to Sue.

## PARTIES

7. That at all times relevant hereto, Plaintiff CONDE was a resident of the State of New York and the County of New York.

8. That at all times relevant hereto, SISLEY COSMETICS USA, INC. ("SISLEY"), the

defendant herein, was a foreign corporation duly organized and existing under and by virtue of the laws of the State of New York, with headquarters located at 2975 Westchester Ave., # G02, Purchase, NY 10577-2500.

9. SAKS INCORPORATED ("SAKS"), the defendant herein, at all times hereinafter mentioned, was a corporation duly organized and existing under and by virtue of the laws of the State of New York, with offices located at 12 East 49th Street, New York, NY 10017.

10. Defendant SAKS is the owner of the Saks Fifth Avenue store located at 611 Fifth Avenue, New York, NY 10022 ("New York Saks Fifth Avenue location").

11. BHAGVAN DUGRE ("DUGRE"), the defendant herein, at all times hereinafter mentioned, was an employee of Defendant SISLEY and Defendant SAKS, and was Plaintiff CONDE's direct supervisor. Defendant DUGRE was an employee of Defendant SAKS due to the control that Defendant SAKS held over Defendant DUGRE in the terms and conditions of her employment as well as the manner and means in which she performed her job

12. Defendant DUGRE, at all times herein mentioned, had supervisory authority over Plaintiff CONDE.

13. That at all times relevant hereto, Defendant DUGRE held the position of "Business Manager" at the New York Saks Fifth Avenue location.

14. That at all times relevant hereto, Plaintiff CONDE was an employee of Defendant SISLEY.

15. That at all times relevant hereto, Plaintiff CONDE was an employee of Defendant SAKS due to the control that Defendant SAKS held over Plaintiff CONDE in the terms and

conditions of her employment as well as the manner and means in which she performed her job.

16. Defendant SISLEY, Defendant SAKS, and Defendant DUGRE are collectively referred to herein as "Defendants."

## MATERIAL FACTS

17. Plaintiff CONDE is an African-American woman from Guinea.

18. On or about September 17, 2007, Plaintiff CONDE began working for Defendant SISLEY in the position of "Vendor Support" assigned to the New York Saks Fifth Avenue location.

19. Plaintiff CONDE, in order to be hired into the position, had to interview with Defendant SAKS director of cosmetics in order to obtain the position. Upon information and believe, Defendant SAKS maintained the ability to deny employment to Plaintiff CONDE.

20. At the time she was hired, Plaintiff CONDE's pay rate was approximately $36.75 per hour plus an annual bonus.

21. In or about February 2010, Plaintiff SISLEY changed the way in which it paid its employees, and as a result, Plaintiff CONDE's pay rate was changed to $27.00 per hour plus 3% of all monthly sales.

22. At all times relevant hereto, Plaintiff CONDE was an exemplary employee.

23. In fact, while working at the New York Saks Fifth Avenue location, Plaintiff CONDE was one of Defendant SISLEY's most successful salespeople.

24. Throughout the time Plaintiff CONDE worked in that location she was required to clock in and out of Defendant SAKS registers. If she forgot to clock in or out she had to

contact one of Defendant SAKS managers to remedy the situation. Defendant SAKS also issued statements to Defendant SISLEY which detailed the amount of commission Plaintiff CONDE had earned for that month.

25. Each morning Plaintiff CONDE was required to attend mandatory meetings with Defendant SAKS directors and managers where they were told how to dress and other requirements on appearance enforced by Defendant SAKS.

26. Throughout the day Defendant SAKS' management walked around to ensure that the rules and regulations that were in place were being complied with. Plaintiff CONDE and others were monitored for customer interactions, skills, daily goals, eating and drinking on the selling floor, talking amongst other employees, special event execution, given new regulations and discount control. Each of these were means that Defendant SAKS used to control Plaintiff CONDE and other employees of Defendant SISLEY.

27. On one occasion, Plaintiff CONDE was given a written warning at the request of a Defendant SAKS director who had overheard a conversation between Plaintiff CONDE and another Defendant SISLEY employee. This written warning was given to Plaintiff CONDE by two other of Defendant SAKS' directors.

28. Defendant SAKS would often remind Plaintiff CONDE that she could be terminated if she did not follow their requirements.

29. Defendant SAKS had this same control over Defendant DUGRE.

30. However, throughout Plaintiff CONDE's employment, **she was consistently and continuously harassed by Defendant DUGRE solely on the basis of her race and national origin**.

31. By way of example, Defendant DUGRE would routinely make disparaging comments

about black women, and even told Plaintiff CONDE on numerous occasions that, **"most guys prefer women with blonde hair and blue eyes."**

32. In or about 2009, Defendant DUGRE told Plaintiff CONDE that that **"there were too many of [Plaintiff CONDE] working for the company"** and that Defendant SISLEY **"wanted more blonde girls to represent the company."**

33. When Plaintiff CONDE told Defendant DUGRE that she was from Guinea, Defendant DUGRE made sure to tell Plaintiff CONDE that there's so much poverty in Africa.

34. Moreover, Defendant DUGRE told Plaintiff CONDE several times that President Obama was useless because he is black.

35. In addition, throughout Plaintiff CONDE's employment, Defendant DUGRE also engaged in a pattern and practice of retaliating against Plaintiff CONDE for her opposition to the racially discriminatory business practices of Defendant SISLEY's vendor, Mary Michaels.

36. **Throughout Plaintiff CONDE's employment, Plaintiff CONDE observed Ms. Michaels discriminating against numerous Arab customers by specifically targeting them due to their race and national origin and selling them various products at exorbitant prices.**

37. In fact, **Ms. Michaels even sold Arab customers samples that were supposed to be given out for free.**

38. **Ms. Michaels only targeted customers that appeared to be Arab and never attempted to take advantage of any other customers.**

39. As a result, in or about Summer 2009, as Defendant DUGRE was away on vacation, Plaintiff CONDE reported Ms. Michael's illegal and discriminatory behavior to Scarlet

Kelly, Defendant SISLEY's Account Coordinator.

40. Approximately one (1) week later, when Defendant DUGRE returned from vacation, it was apparent that she learned of Plaintiff CONDE's complaint, **as Defendant DUGRE immediately began to retaliate against Plaintiff CONDE**.

41. By way of example, Defendant DUGRE suddenly began to ignore Plaintiff CONDE, refusing to even look at her or acknowledge her presence.

42. Nevertheless, Ms. Michaels continued to perpetrate her discriminatory scheme against, and take advantage of, Defendant SISLEY's Arab customers.

43. As Defendant SISLEY did nothing in response to Plaintiff CONDE's complaints, **on or about August 22, 2010, Plaintiff CONDE personally complained to Defendant DUGRE that Ms. Michaels was still targeting and discriminating against Arab customers** by wrongfully taking cash from them in exchange for Defendant SISLEY's samples – samples that Defendant SISLEY does not even sell.

44. Shockingly, instead of investigating Ms. Michaels' discriminatory and illegal behavior, Defendant DUGRE responded by telling Plaintiff CONDE, **"who cares if Mary sells them for $1,000? You are just jealous of Mary."** Plaintiff CONDE was absolutely horrified by this response.

45. **In fact, rather than investigating Plaintiff CONDE's numerous complaints of blatant discrimination, Defendants instead decided to retaliate even further and suspend Plaintiff CONDE's employment**.

46. Later that same day, on or about August 22, 2010, Defendant DUGRE called Plaintiff CONDE into a meeting with Patty and Lee, Defendant SAKS' employees, where she arbitrarily accused Plaintiff CONDE of insulting customers and told her to go home and

wait for someone to call her. Defendant SAKS employee Patty informed Plaintiff CONDE that she was no longer permitted to work in Defendant SAKS store, substantively terminated her.

47. **This was clearly fabricated, as Defendants had never before disciplined Plaintiff CONDE or even criticized her work performance before she started to complain about Ms. Michaels' discriminatory and illegal actions.**

48. Plaintiff CONDE now realized that Defendant DUGRE was going to do everything in her power to protect Ms. Michaels with whom she's had a personal relationship for about twenty (20) years at the expense of Plaintiff CONDE.

49. It was around this time that Plaintiff CONDE learned of Defendant DUGRE's active participation in, and cover up of, Ms. Michael's discriminatory scheme. Plaintiff CONDE learned that Defendant DUGRE actually instructed a co-worker, Anabel Camacho, to hide the samples that Ms. Michaels had stolen from Defendant SISLEY and sold to an Arab customer for $300 cash in her locker.

50. Furthermore, only days earlier, Plaintiff CONDE overheard Defendant DUGRE telling Ms. Camacho that she will get rid of Plaintiff CONDE to protect Ms. Michaels.

51. **On or about August 28, 2010, while at home, Plaintiff CONDE finally received a phone call from Mary-Ann Krzos, Defendant SISLEY's Human Resource Director, who advised her that her only option was to be transferred to Bloomingdale's, which only did a small fraction of the business that Defendant SISLEY did at the New York Saks Fifth Avenue location.**

52. In addition, Mary-Ann Krzos threatened Plaintiff CONDE that if she decided to accept the transfer, she would have to sign a final warning stating that if she had any

confrontations at the new location, she would be immediately terminated.

53. As the majority of Plaintiff CONDE's income came from commissions, accepting this transfer would effectively constitute a demotion and significant decrease in pay.

54. **As such, Plaintiff CONDE notified Defendant SISLEY that due to the retaliatory demotion and decrease in pay, she felt she had no choice but to resign from her position.**

55. Plaintiff CONDE felt that any ordinary person in her shoes would have felt compelled to resign from her employment.

56. **As a result of the patently and brazenly illegal behavior described herein, Plaintiff CONDE was thus constructively discharged from her employment effective August 28, 2010.**

57. Plaintiff CONDE felt offended, disturbed, and humiliated by this illegal termination.

58. **Defendants treated Plaintiff CONDE differently because of her race and because she complained of race-based discrimination.**

59. **Defendants constructively terminated Plaintiff CONDE's employment because of her race and because she complained of race-based discrimination.**

60. The above are just some of the acts of discrimination, harassment and retaliation that Plaintiff CONDE experienced when working for Defendants.

61. Subsequent to Plaintiff CONDE's constructive termination, in or about February 2011, **Ms. Michaels' employment was terminated after Defendant SAKS' security caught her stealing merchandise, confirming the validity of Plaintiff CONDE's numerous complaints.**

62. Plaintiff CONDE's performance was, upon information and belief, above average during

the course of her employment with Defendants.

63. Plaintiff CONDE has been unlawfully discriminated against, humiliated, retaliated against, has been degraded, and as a result, suffers loss of rights, emotional distress, loss of income and earnings.

64. **Defendants' actions and conduct were intentional and intended to harm Plaintiff CONDE.**

65. As a result of Defendants' actions, Plaintiff CONDE feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

66. Defendants' hostile actions created an unlawfully hostile working environment, which no reasonable person would tolerate.

67. As a result of Defendants' discriminatory treatment of Plaintiff CONDE, she has suffered severe emotional distress and physical ailments.

68. As a result of the acts and conduct complained of herein, Plaintiff CONDE has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. ' Plaintiff further experienced severe emotional and physical distress.

69. As a result of the above, Plaintiff CONDE has been damaged in an amount in excess of the jurisdiction of the Court.

70. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.  As such, Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
## (Not Against Individual Defendant)

71. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

72. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendants.

73. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's national origin and race.

74. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff because of her national origin and race.

## AS A SECOND CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
## (Not Against Individual Defendant)

75. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

76. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

11

77. Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e et seq. by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendants.

### AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

78. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

79. The Administrative Code of City of NY § 8-107 [1] provides that, "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

80. Defendants violated the section cited herein as set forth.

### AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

81. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

82. The New York City Administrative Code Title 8, §8-107 (7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise

discriminate against any person because such person **has opposed any practices** forbidden under this chapter. . ."

83. Defendants violated the section cited herein as set forth.

### AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

84. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

85. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person **to aid, abet, incite, compel, or coerce** the doing of any of the acts forbidden under this chapter, or attempt to do so."

86. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory and unlawful conduct.

### AS A SIXTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

87. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

88. New York City Administrative Code Title 8-107(19) **Interference with protected rights**. It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or

protected pursuant to this section.

89. Defendants violated the section cited herein as set forth.

### AS A SEVENTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

90. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

91. New York City Administrative Code Title 8-107(13) **Employer liability** for discriminatory conduct by employee, agent or independent contractor.

> a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.
>
> b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:
>
>> i. the employee or agent exercised managerial or supervisory responsibility; or
>>
>> ii. the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or
>>
>> iii. the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to

14

        prevent such discriminatory conduct.

   c. An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an **independent contractor**, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

92. Defendants violated the section cited herein as set forth.

## AS AN EIGHTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER 42 U.S.C. Section 1981

93. Plaintiff repeats and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

94. 42 USC Section 1981 states in relevant part as follows:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C.A. § 1981

95. Plaintiff, a member of the African American race, was discriminated against because of her race as provided under 42 USC Section 1981 and has suffered damages as set forth herein.

96. Moreover, Plaintiff claims that in the alternative event that the Court deems Plaintiff an Independent Contractor, she is protected under 42 USC Section 1981. (see *Danco, Inc. v. Wal-Mart Stores*, Inc., 178 F.3d 8, 14 (1st Cir.1999) and Morris v. Great Lakes Behavioral Institute/Diversified Care Management 2007 WL 4198273, 15 (W.D.Pa.) (W.D.Pa.,2007).

## INJURY AND DAMAGES

97. As a result of the acts and conduct complained of herein, Plaintiff CONDE has suffered and will continue to suffer the loss of a career and the loss of a salary, bonuses, benefits and other compensation which such employment entails, out-of-pocket medical expenses and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, injury to her reputation, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

## JURY DEMAND

98. Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that the Defendants engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et. Seq. ("Title VII") and the New York City Human Rights Law, Administrative Code § 8-107 et seq. (the

"NYCHRL"), by discriminating against Plaintiff on the basis of her race and national origin, and then unlawfully terminating her employment in retaliation for complaining about race-based discrimination;

B. Awarding damages to the Plaintiff, retroactive to the date of her discharge for all lost wages and benefits resulting from Defendants' unlawful termination of her employment and to otherwise make her whole for any losses suffered as a result of such unlawful employment practice;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of the action;

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: New York, New York
September 19, 2011

>PHILLIPS & PHILLIPS
>ATTORNEYS AT LAW, PLLC
>
>_/s/William K. Phillips_
>William K. Phillips, Esq. (wp0409)
>30 Broad Street, 35th Floor
>New York, NY 10004
>(212) 587-0760