**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------- X

SERE CONDE,                                    :
                                               :
                        Plaintiff,             :      No. 11 Civ. 4010 (RJS)(THK)
                                               :
            -against-                          :
                                               :
SISLEY COSMETICS USA, INC.,                    :
SAKS INCORPORATED, and                         :
BHAGVAN DUGRE, *Individually*,                 :
                                               :
                        Defendants.            :
-------------------------------------------------------------- X


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SAKS INCORPORATED'S**
<u>**MOTION TO DISMISS**</u>

**THOMPSON WIGDOR LLP**

Douglas H. Wigdor
Lawrence M. Pearson
85 Fifth Avenue
New York, New York 10003
Phone: (212) 257-6800
Facsimile: (212) 257-6845
dwigdor@thompsonwigdor.com
lpearson@thompsonwigdor.com

*COUNSEL FOR DEFENDANT*
*SAKS INCORPORATED*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT ............................................................................1

STATEMENT OF ALLEGATIONS AND FACTS....................................................2

ARGUMENT ...................................................................................................4

    I.    THE COMPLAINT DOES NOT PLEAD THAT SAKS WAS CONDE'S
        EMPLOYER UNDER ANY COGNIZABLE THEORY ..............................................4

        A.  The Complaint Does Not Contain Factual Allegations Supporting an
            Employment Relationship with Saks ......................................................5

        B.  Conde Has Not Pled Facts to Demonstrate a Single Employer Relationship
            Existed Between Saks and Sisley ...........................................................8

        C.  Conde Has Not Pled Facts to Demonstrate a Joint Employer Relationship
            Existed Between Saks and Sisley .........................................................11

    II.    THE COMPLAINT FAILS TO PLEAD THAT SAKS ENGAGED IN ANY
         UNLAWFUL CONDUCT TOWARDS CONDE ......................................................14

        A.  Conde Has Not Pled Facts Alleging that Saks Discriminated Against Her, and
            Joint Employer Status Alone Is Insufficient to Impute Liability To Saks ............14

        B.  Conde Failed to Plead Facts Alleging that Saks Retaliated Against Her ..............16

        C.  The Complaint Does Not Plead Sufficient Facts to Establish Constructive
            Discharge ........................................................................................19

    III.    CONDE FAILS TO STATE A CLAIM AGAINST SAKS AS AN AIDER OR
         ABETTOR .......................................................................................................21

    IV.    CONDE FAILED TO SATISFY THE ADMINISTRATIVE REQUIREMENTS
         FOR FILING A TITLE VII CLAIM AGAINST SAKS..............................................22

CONCLUSION................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Arcuelo v. On-Site Sales and Marketing, LLC,*
    425 F.3d 193 (2d Cir. 2005)...........................................................................9

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009)...........................................................................4, 5, 7

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)..................................................................................4, 5

*Brice v. Sec. Operations Sys., Inc.,*
    No. 00-CV-2438 (GEL), 2001 WL 185136 (S.D.N.Y. Feb. 26, 2001) ...........................21

*Callahan v. Consol. Edison Co. New York, Inc.,*
    187 F. Supp. 2d 132 (S.D.N.Y. 2002)...............................................................17

*Cmty. for Creative Non-Violence v. Reid,*
    490 U.S. 730 (1989)....................................................................................7

*Cook v. Arrowsmith Shelburne, Inc.,*
    69 F.3d 1235 (2d Cir. 1995)............................................................................9

*Costa v. City of New York,*
    546 F. Supp. 2d 117 (S.D.N.Y. 2008)...............................................................20

*Cruz v. Coach Stores, Inc.,*
    202 F.3d 560 (2d Cir. 2000)...........................................................................14

*Darden v. DaimlerChrysler N. Am. Holding Corp.,*
    191 F. Supp. 2d 382 (S.D.N.Y. 2002)...........................................................11, 24

*Day v. Distinctive Pers., Inc.,*
    656 F. Supp. 2d 331 (E.D.N.Y. 2009) .............................................................18

*Dean v. Westchester County Dist. Attorney's Office,*
    119 F. Supp. 2d 424 (S.D.N.Y. 2000)...............................................................20

*Feingold v. New York,*
    366 F.3d 138 (2d Cir. 2004)...........................................................................14

*Gonzalez v. Allied Barton Soc. Servs.,*
    No. 08-CV-9291 (RJS) (RLE), 2010 WL 3766964 (S.D.N.Y. Sept. 7, 2010) .................11

*Gray v. Shearson Lehman Bros.*,
    947 F. Supp. 132 (S.D.N.Y. 1996)...................................................................23

*Gulino v. New York State Educ. Dept.*,
    460 F.3d 361 (2d Cir. 2006)..................................................................7, 8

*Hargett v. Metropolitan Transit Authority*,
    552 F. Supp. 2d 393 (S.D.N.Y. 2008).................................................................8

*Hargett v. Nat'l Westminster Bank, USA*,
    78 F.3d 836 (2d Cir. 1996)......................................................................14

*Hunt v. Pritchard Indus., Inc.*,
    No. 07-CV-0747 (AJP), 2007 WL 1933904 (S.D.N.Y. July 3, 2007)..............................24

*Johnson v. Palma*,
    931 F.2d 203 (2d Cir. 1991)....................................................................23

*Jute v. Hamilton Sundstrand Corp.*,
    420 F.3d 166 (2d Cir. 2005)....................................................................17

*Kearney v. Kessler Family LLC*,
    No. 11-CV-06016 (MAT), 2011 WL 2693892 (W.D.N.Y. July 11, 2011)......................11

*Kilkenny v. Greenberg Traurig, LLP*,
    No. 05-CV-6578 (NRB), 2006 WL 1096830 (S.D.N.Y. Apr. 26, 2006)...................13, 23

*Lans v. Kiska Const. Corp.*,
    No. 96-CV-4114 (KMW) (AJP), 1997 WL 313162 (S.D.N.Y. Apr. 18, 1997) ...........7, 15

*Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*,
    274 F.3d 683 (2d Cir. 2001)....................................................................23

*Lima v. Addeco*,
    634 F. Supp. 2d 394 (S.D.N.Y. 2009*), aff'd sub nom*,
    375 F. App'x. 54 (2d Cir. 2010) ............................................................ *passim*

*Lindner v. Int'l Bus. Machines Corp.*,
    No. 06-CV-4751 (RJS), 2008 WL 2461934 (S.D.N.Y. June 18, 2008) ..........................18

*Manos v. Geissler*,
    377 F. Supp. 2d 422 (S.D.N.Y. 2005)...........................................................24

*Miller v. Praxair, Inc.*,
    408 F. App'x 408 (2d Cir. 2010), *cert. denied,* 131 S. Ct. 3067 (U.S. 2011)...................19

*Murdaugh v. City of New York*,
    No. 10-CV-7218 (HB), 2011 WL 798844 (S.D.N.Y. Mar. 8, 2011), *reconsideration denied,* No. 10-CV-7218 (HB), 2011 WL 1991450 (S.D.N.Y. May 19, 2011) ...............20

*Murray v. Miner*,
    74 F.3d 402 (2d. Cir. 1996)........................................................................................9, 10

*NLRB v. Solid Waste Servs., Inc.*,
    38 F.3d 93 (2d Cir.1994)..................................................................................................11

*Nugent v. St. Luke's-Roosevelt Hosp. Ctr.*,
    No. 05-CV-5109 (JCF), 2007 WL 1149979 (S.D.N.Y April 18, 2007), *aff'd sub nom.,*
    303 F. App'x 943 (2d Cir. 2008) .....................................................................................19

*Pena v. Brattleboro Retreat*,
    702 F.2d 322 (2d Cir. 1983)............................................................................................19

*Robles v. Goddard Riverside Cmty. Ctr.*,
    No. 08-CV-4856 (LTS) (JCF), 2009 WL 1704627 (S.D.N.Y. June 17, 2009) ..........21, 22

*Rosario v. Potter*,
    No. 07-CV-5891 (SCR) (GAY), 2009 WL 3049585 (S.D.N.Y. Sept. 23, 2009).............23

*Ruiz v. County of Rockland*,
    609 F.3d 486 (2d Cir. 2010).............................................................................................5

*Schade v. Coty, Inc.*,
    No. 00-CV-1568 (JGK), 2001 WL 709258 (S.D.N.Y. June 25, 2001) ...........................11

*Shipkevich v. Staten Island Univ. Hospital*,
    No. 08-CV-1008 (FB) (JMA), 2009 WL 1706590 (E.D.N.Y. June 16, 2009)...................6

*Snyder v. Advest, Inc.*,
    No. 06-CV-1426 (RMB) (FM), 2008 WL 4571502 (S.D.N.Y. June 8, 2008) ...................9

*Stetson v. NYNEX*,
    995 F.2d 355 (2d Cir. 1993)............................................................................................19

*Velez v. Novartis Pharmaceuticals Corp.*,
    244 F.R.D. 243 (S.D.N.Y. 2007) ......................................................................................9

**STATUTES AND CODES**

42 U.S.C. § 2000e-2(a) ................................................................................................................5

N.Y.C. Admin. Code § 8-107(1)(a) .............................................................................................5

N.Y.C. Admin. Code § 8-502 ......................................................................................................23

N.Y. Exec. L. § 292 ......................................................................................................................5

N.Y. Exec. L. § 296 ......................................................................................................................5

Defendant Saks Incorporated ("Saks") respectfully submits this memorandum of law in support of its motion, pursuant to Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6), to dismiss with prejudice Plaintiff Sere Conde's ("Conde") Amended Complaint (the "Complaint") as against Saks.  As set forth in greater detail below, Conde's Complaint is devoid of any factual allegations concerning Saks's role in the discriminatory and retaliatory conduct to which she was allegedly subjected, and the Complaint fails to state a cause of action against Saks as Conde's employer, or under any other cognizable legal theory.  Additionally, should the Court find that Conde adequately stated claims against Saks, her claims under Title VII must be dismissed because she failed to exhaust her administrative remedies when she did not name Saks in her Charge filed with the EEOC.

## PRELIMINARY STATEMENT

Plaintiff Sere Conde is a former employee of Defendant Sisley Cosmetics USA, Inc. ("Sisley") who alleges that she was subjected to offensive comments by a Sisley employee due to her race and national origin, and that she was constructively discharged by Sisley when it decided to transfer her from its cosmetics counter in Saks to its location in Bloomingdale's. Fatal to Conde's claims against Saks, however, is the Complaint's failure to allege any facts that could plausibly state a claim against Saks.  Conde's amendment of her original complaint to include token allegations concerning her alleged incidental and tangential contact with Saks personnel during her employment with Sisley does not rescue her claims against Saks from dismissal.

Conde's allegations show that Sisley employed her and her coworkers, whereas Saks managed the store in which Sisley's cosmetics counter was located.  There is no allegation that Saks paid Conde, evaluated her performance, or made any decisions regarding her employment,

including the decision to transfer her to another Sisley location.  Rather, the allegations regarding Saks all pertain to its arm's-length relationship with Sisley.  Conde has made no attempt to suggest that there is any interrelation of ownership, management, or operations between Sisley and Saks, and her allegations of occasional contacts with Saks personnel are insufficient to establish Saks as a joint employer with Sisley.  Therefore, Saks cannot be considered to have "employed" Conde under any cognizable theory, including those of single or joint employment.

Conde's claims against Saks also fail due to the lack of any allegation that Saks took part in or was even aware of the alleged discriminatory acts, protected activity, or retaliation.  Rather, Conde's allegations concern the actions of Sisley and its employees, including the decisions to hire her, assign her to the Sisley counter in Saks, and transfer her to Bloomingdale's.  Notably, Conde admits that she complained about a coworker's allegedly discriminatory conduct only to a member of Sisley's staff, and that her alleged and insufficiently pleaded constructive discharge was spurred by a phone call from Sisley's Human Resources Director.  Moreover, the Complaint contains no allegations that Sisley personnel, including Conde's direct supervisor, were acting at the behest of Saks, or that Saks somehow shared any alleged animus with the other Defendants.

The gratuitous nature of Saks's inclusion as a defendant in the instant case is further illustrated by Conde's failure to name Saks as a respondent in her EEOC Charge against Sisley, thereby dooming her Title VII claim against Saks.  For these reasons, Conde fails to state a claim against Saks.

## STATEMENT OF ALLEGATIONS AND FACTS

Saks is a world-renowned department store whose flagship location sits at 611 Fifth Avenue in New York City (the "Store").  (Complaint ¶ 10, which is attached to the Declaration of Douglas H. Wigdor as Exhibit A).  Sisley maintains a counter in the Store's cosmetics

department and is one of a multitude of vendors responsible for a discrete location within the Store.  (Compl. ¶ 18).   Conde was hired by Sisley in September 2007 and was assigned by Sisley to a "Vendor Support" position in the Store, where she worked until August 2010. (Compl. ¶¶ 18, 51, 54).

Throughout the course of her employment with Sisley, Conde claims she was subjected to disparaging remarks and comments by her supervisor, Defendant Bhagvan Dugre ("Dugre"), another Sisley employee.  (Compl. ¶¶ 30-34).  In addition to the alleged comments, Conde claims Dugre retaliated against her for opposing allegedly discriminatory business practices by yet another Sisley employee, Mary Michaels ("Michaels").  (Compl. ¶ 36).  Conde reported this alleged activity by Michaels to another Sisley employee around the summer of 2009.  (Compl. ¶ 39).  Conde further alleges that Dugre retaliated against her by ignoring her and refusing to acknowledge her presence.  (Compl. ¶¶ 40-41).  Although Conde complained about Michaels' alleged discriminatory actions to a Sisley Account Coordinator in summer 2009, she allegedly complained to Dugre next only on August 22, 2010.  (Compl.  ¶ 43).  Conde alleges that Sisley failed to investigate her complaint, and that in response Dugre suspended her employment following an incident in which Conde was accused of insulting customers.  (Compl. ¶¶ 45-46).

On August 28, 2010, Conde alleges that during her suspension she received a telephone call from Sisley's Human Resource Director, who informed her that she was to receive a final disciplinary warning and would be transferred to the Sisley counter in Bloomingdale's, another department store where Conde claims less Sisley products are sold.  (Compl. ¶ 51).  Conde admits that she chose to resign from her employment with Sisley rather than accept the transfer to Bloomingdale's.  (Compl. ¶ 54).

On November 16, 2010, Conde filed a Charge of discrimination and retaliation against Sisley with the Equal Employment Opportunity Commission ("EEOC"), which is attached to the Declaration of Douglas H. Wigdor as Exhibit B.  Conde did not name Saks as a respondent in her EEOC Charge, nor did she allege therein that Saks played any role in any alleged discrimination or retaliation.  On September 23, 2011, Conde filed the instant Amended Complaint against Defendants Sisley, Saks and Dugre.[1]  As against Saks, Conde alleges that it violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, the New York State Human Rights Law ("NYSHRL"), New York Executive Law §§ 290, *et seq.*, the New York City Human Rights Law ("NYCHRL"), New York City Administrative Code § 8-101, *et seq.* and 42 U.S.C. § 1981 ("Section 1981") by discriminating against Conde based on her race and national origin, and unlawfully terminating Conde's employment because of her opposition to allegedly discriminatory business practices engaged in by a Sisley employee.  (Compl. ¶¶ 71-83, 93-96).  In the alternative, Conde alleges that Saks should be held liable under the NYCHRL for aiding or abetting the alleged discriminatory conduct detailed throughout the Complaint.  (Compl. ¶¶ 84-86).  Conde also brought similar claims against Sisley.

## ARGUMENT

### I.  THE COMPLAINT DOES NOT PLEAD THAT SAKS WAS CONDE'S EMPLOYER UNDER ANY COGNIZABLE THEORY

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim which can survive a motion to dismiss.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

---

[1]  Conde's original Complaint was filed on May 21, 2011 and the Amended Complaint was filed after Saks indicated it would be moving for the relief requested herein.

(2007)).  Conde, like the plaintiff in *Iqbal*, has asserted claims of discrimination, and therefore her complaint also "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 570).  The Court observed in *Iqbal* that although "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, [] it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Id.*  at 1950.  As a result, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that . . . plausibly give[s] rise to an entitlement to relief."  *Id.* at 1949-1950.

The Complaint completely fails to satisfy the *Iqbal* standard regarding all claims against Saks.  Specifically, Conde failed to plead facts demonstrating that: (1) Saks is her employer; (2) Saks may be held liable under any alternate theory applicable in the employment discrimination context, including those of single or joint employer liability; (3) Saks played any role in the alleged discriminatory or retaliatory actions; or (4) Saks had knowledge of any alleged discriminatory conduct by Conde's coworkers or protected activity on Conde's part.  Therefore, even accepting the Complaint's allegations as true for purposes of this motion only, Conde's claims against Saks must be dismissed as a matter of law.

## A.    The Complaint Does Not Contain Factual Allegations Supporting an Employment Relationship with Saks

Conde has alleged that Saks was her employer, and therefore must plead sufficient facts to establish that Saks was her "employer" under the statutes under which she has brought her claims.[2]  *See* 42 U.S.C. § 2000e-2(a); N.Y. Exec. L. §§ 292, 296; N.Y.C. Admin. Code § 8-

---

[2]      Courts apply the same factors under Title VII, the NYSHRL, the NYCHRL, and Section 1981 to determine whether an employment relationship exists.  *See Ruiz v. County of Rockland*,

107(1)(a).  Realizing this limitation, Conde inserted into her Complaint the conclusory allegation that she was employed by both Sisley and Saks throughout the entirety of the period in which she worked at Sisley's counter in the Store.  *See* Compl. ¶¶ 14-15.  The assertion that Saks was Conde's employer, however, is belied by the factual allegations contained in the Complaint, which reveal that her contact with Saks was, at most, tangential to her employment and allegations.  Rather than demonstrate that Conde was employed by both Sisley and Saks, her allegations only reveal and support an employment relationship between Conde and Sisley.  For instance, Conde alleges that, *inter alia*:

- She began working for Sisley on or about September 17, 2007 and was assigned by Sisley to the Store (Compl. ¶ 18);

- Sisley determined her rate of compensation, paid her, and she was subject to Sisley's compensation policies and practices (Compl. ¶¶ 20-21);

- She was one of Sisley's most successful salespeople (Compl. ¶ 23);

- She reported a coworker's allegedly discriminatory behavior towards customers to a Sisley Account Coordinator (Compl. ¶ 39);

- The decision to transfer her to Bloomingdale's was made, and communicated to her, by Sisley's Human Resources Director (Compl. ¶ 51); and

- She notified Sisley when she resigned her employment on August 28, 2010. (Compl. ¶ 54).

---

609 F.3d 486, 491 (2d Cir. 2010) (Section 1981 claims analyzed in the same fashion as those under Title VII); *Shipkevich v. Staten Island Univ. Hospital*, No. 08-CV-1008 (FB) (JMA), 2009 WL 1706590 at *3 (E.D.N.Y. June 16, 2009) ("The analysis used to determine whether an entity is an individual's employer pursuant to the NYHRL and NYCHRL is substantially the same as that used under Title VII.").

The question of whether an employment relationship exists for purposes of a plaintiff's claims under Title VII is generally determined using the common law agency doctrine. *See Gulino v. New York State Educ. Dept.*, 460 F.3d 361, 371 (2d Cir. 2006) (noting that "when Congress has used the term 'employee' without defining it, ... Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine") (citing *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 739-40 (1989)). Within the Second Circuit, however, "a prerequisite to considering whether an individual is [an employee] under common-law agency principles is that the individual have been *hired* in the first instance." *Id.* at 372 (stating further that in determining whether an individual has been "hired," courts look "primarily to 'whether [a plaintiff] has received direct or indirect remuneration from the alleged employer'"). In situations "where no financial benefit is obtained by the purported employee from the employer, no plausible employment relationship *of any sort* can be said to exist." *Id.* (emphasis added).

Therefore, since Saks neither hired nor paid Conde by her own admission, it cannot be considered Conde's employer under the common-law agency doctrine. Sisley was the only entity who determined her compensation for the entirety of her employment and Saks had no control or involvement in setting the terms of her compensation. A blanket declaration of an employer-employee relationship is wholly insufficient to state a claim against Saks as Conde's employer. *See Iqbal, supra*; *see also Lans v. Kiska Const. Corp.*, No. 96-CV-4114 (KMW) (AJP), 1997 WL 313162 at *5 (S.D.N.Y. Apr. 18, 1997) (conclusory allegation that defendant is plaintiff's "employer," without more, is insufficient to plead the existence of an employment relationship).

In another transparent and unfounded attempt to embroil Saks in her lawsuit through conclusory allegations, Conde often aggregates Sisley, Saks and Dugre under the blanket term "Defendants" in her complaint, without differentiating which party engaged in various actions. This simple aggregation, however, does not present the factual allegations necessary to hold Saks liable as an employer for the alleged discriminatory and retaliatory conduct engaged in by undifferentiated "Defendants."  *See Lima v. Addeco*, 634 F. Supp. 2d 394, 402 (S.D.N.Y. 2009*) aff'd sub nom. Lima v. Adecco &/or Platform Learning, Inc.*, 375 F. App'x. 54 (2d Cir. 2010) (summary judgment granted dismissing plaintiff's claims where the only evidence presented of an employment relationship between defendant and plaintiff's employer was the interchangeable use of the names of the two entities in plaintiff's brief and declaration).  Accordingly, Conde's claims against Saks under Title VII, the NYSHRL, the NYCHRL, and Section 1981 must be dismissed due to her failure to establish that Saks was her "employer."  *See Hargett v. Metropolitan Transit Authority*, 552 F. Supp.2d 393, 406 (S.D.N.Y. 2008) (granting motion to dismiss where the "complaint states no facts that tend to suggest that plaintiff was employed by [defendant]").

**B.      Conde Has Not Pled Facts to Demonstrate a Single Employer Relationship Existed Between Saks and Sisley**

The Complaint does not offer another basis for liability by Saks other than to assert that Saks was Conde's "employer."  However, even if the Court was to consider alternate theories of liability, Conde failed to state a claim against Saks under any other cognizable legal theory, including the single or joint employer analysis.  These theories are to be applied only in limited contexts, as recently noted by the Second Circuit.  *See Gulino*, 460 F.3d at 378 ("In this Circuit, [the single or joint employer] analysis has been confined to two corporate contexts: first, where

the plaintiff is an employee of a wholly owned corporate subsidiary; and second, where the plaintiff's employment is subcontracted by one employer to another, formally distinct, entity.").

A single employer relationship exists "where two nominally separate entities are actually part of a single, integrated enterprise." *Arcuelo v. On-Site Sales and Marketing, LLC*, 425 F.3d 193, 198 (2d Cir. 2005); *see also Murray v. Miner*, 74 F.3d 402, 404 (2d. Cir. 1996) (single employer doctrine will only be applied to treat "employees of a corporate entity as the employees of a related entity under extraordinary circumstances"); *Snyder v. Advest, Inc.*, No. 06-CV-1426 (RMB) (FM), 2008 WL 4571502 at *6 (S.D.N.Y. June 8, 2008) (noting that "[c]ourts do not readily find that related entities are single employers in discrimination cases") (internal citations omitted). As explained further below, none of these conditions or "extraordinary circumstances" is present in the instant case.

In order to determine whether a single employer relationship exists, courts look at four factors: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240-41 (2d Cir. 1995). Conde makes no attempt to allege that Saks and Sisley are related corporate entities with integrated operations, common management, or common ownership. *See Snyder*, 2008 WL 4571502 at *6 (plaintiff could not demonstrate that two entities had an interrelation of operations where they were headquartered in different states, maintained separate bank accounts, issued their own paychecks and prepared their own financial statements, budgets and forecast). The complete lack of any allegations regarding these factors gravely undermines any claim that Sisley and Saks constituted a single enterprise.

The most salient factor in the single employer analysis is "whether the two enterprises exhibit centralized control of labor relations, including tasks such as handling job applications,

approving personnel status reports, and exercising veto power over major employment decisions." *Velez v. Novartis Pharmaceuticals Corp.*, 244 F.R.D. 243, 250 (S.D.N.Y. 2007) (internal citation omitted).  This factor of the single employer analysis may be boiled down to the question of: "what entity made the final decision regarding employment matters related to the person claiming discrimination?"  *Id.*; *see also Murray*, 74 F.3d at 405 (recognizing that the policy behind the single employer doctrine "is most implicated where one entity actually had control over the labor relations of the other entity, and, thus, bears direct responsibility for the alleged wrong").  However, the Complaint is devoid of factual allegations that Sisley and Saks are related entities with any shared or "centralized" personnel functions or that Saks made final decisions regarding Conde's employment.

Rather, the Complaint reveals that Sisley was the sole entity exercising control over Conde's employment by, *inter alia*, hiring her, setting her compensation, paying her wages, suspending her employment, and making the decision to transfer her to a Sisley counter in Bloomingdale's.  (Compl. ¶¶ 18, 20-21, 23, 46, 51-52).  By contrast, Conde's allegations regarding Saks merely evince efforts to avoid disturbances in the Store, as illustrated by the Complaint's primary examples of her sporadic personal contact with Saks personnel, both in connection with incidents involving Conde.  (Compl. ¶¶ 27, 46).

Furthermore, there are no allegations in the Complaint that Sisley and Saks shared common personnel (e.g., persons who "wear two hats" or transfer between entities), or otherwise maintained common personnel policies or practices.  Conde's conclusory allegation that Saks exercised the same alleged control over her Sisley supervisor, Dugre, as it supposedly did over her is inadequate to plead "centralized" personnel functions or management.  (Compl. ¶ 19). Therefore, Conde failed to plead even a single element of a single employer relationship between

Saks and Sisley.  *See, e.g., Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 396 (S.D.N.Y. 2002) (finding that two entities did not constitute a single employer where plaintiff only alleged that one entity participated in the allegedly discriminatory employment decisions); *Kearney v. Kessler Family LLC*, No. 11-CV-06016 (MAT), 2011 WL 2693892 at *5 (W.D.N.Y. July 11, 2011) ("Plaintiff fails to establish support for the single employer doctrine in that she does not allege any interrelation of operations, centralized control of labor relations, common management, or common ownership or financial support."); *Schade v. Coty, Inc.*, No. 00-CV-1568 (JGK), 2001 WL 709258 at *9-10 (S.D.N.Y. June 25, 2001) (dismissing plaintiff's claims as to one defendant in the putative single employer relationship due to "the absence of any meaningful participation" in employment and labor decisions).

### C.   Conde Has Not Pled Facts to Demonstrate a Joint Employer Relationship Existed Between Saks and Sisley

Entities may be found to be joint employers where "separate legal entities have chosen to handle certain aspects of their employer-employee relationship jointly."  *Lima v. Adecco*, 634 F.Supp.2d at 400; *see also NLRB v. Solid Waste Servs., Inc.*, 38 F.3d 93, 94 (2d Cir.1994) ("A joint employer relationship may be found to exist where there is sufficient evidence that the respondent had immediate control over the other company's employees.").   Courts have identified the relevant factors of the joint employer test as "commonality of hiring, firing, discipline, pay, insurance, records and supervision."  *Gonzalez v. Allied Barton Soc. Servs.*, No. 08-CV-9291 (RJS) (RLE), 2010 WL 3766964 at *3 (S.D.N.Y. Sept. 7, 2010).

Conde's allegations fail to plead a joint employer relationship between Sisley and Saks. The pivotal events of Conde's employment with Sisley in the Store all concerned and were controlled by Sisley.   Conde admits that Sisley hired her, set and paid her compensation, received and allegedly failed to respond to her complaint of discriminatory conduct, suspended

her, and decided to put her on final warning and transfer her to Bloomingdale's.  (Compl. ¶¶ 18, 20-21, 23, 39, 43, 46, 51-52).  Conde also notified Sisley, not Saks, of her decision to resign her employment.  (Compl. ¶ 54).  Indeed, the Complaint fully admits that "Plaintiff CONDE <u>was one of Defendant SISLEY's</u> most successful salespeople."  (Compl. ¶ 23) (emphasis added).

By contrast, Conde does not allege that she was hired, paid, assigned work, suspended, or reassigned by Saks.  Conde's allegations regarding Saks are incidental, are shoe-horned into the Complaint solely to keep Saks embroiled in the litigation (rather than in support of any substantive allegations), and do not concern her fundamental terms and condition of employment.  Allegations regarding the use of Saks-owned cash registers, the sharing of sales information between Saks and Sisley, meetings regarding Store sales strategies, and passing contact with Saks personnel in the Store merely show the natural cooperation between a vendor and the Store, and do not evince substantial control over Conde's employment itself.  (Compl. ¶¶ 24-26).  In addition, there is no allegation of a subcontractor relationship between Saks and Sisley regarding labor, further undermining any claim of "joint" management of any employees.

Conde alleges that unnamed Saks employees would remind her that she could be terminated if she did not follow Saks' requirements. (Compl. ¶ 28).  This vague, conclusory allegation need not be credited by the Court under *Iqbal*, and, in any case, does not show that Saks itself could terminate or take direct action regarding her employment.  Conde's allegation of a lone incident (in three years of employment) in which she received a so-called "written warning" of undetermined nature at the request of an unnamed Saks director is similarly vague and unrelated to any decision regarding her employment.  (Compl. ¶ 27).  The worth of this allegation is further discounted by Conde's own allegation that prior to August 22, 2010, "Defendants had never before disciplined Plaintiff CONDE[.]"  (Compl. ¶ 47).

As to Conde's allegation regarding a purported "interview" with a Saks staff member in order to work in the Store, Conde alleges only "upon information and believe [sic]" that Saks had the so-called "ability to deny employment to Plaintiff." (Compl. ¶ 19).  This disingenuous, vague, and conclusory allegation regarding Saks' supposed "ability" is contradicted within the Complaint itself and is not entitled to a presumption of truth.  The Complaint states that "On or about September 17, 2007, Plaintiff CONDE began working for Defendant SISLEY in the position of "Vendor Support" assigned to the New York Saks Fifth Avenue location."  (Compl. ¶ 18) (emphasis added).  Conde's assertion that Saks had control over her employment is further contradicted by her allegation that, although Saks did not wish her in its Store, only Sisley personnel (Conde's supervisor and a Human Resources Director) had the ability to suspend her employment and made the decisions regarding her discipline and  assignment (to issue a final warning to Conde and offer her a transfer to Bloomingdale's, rather than terminate her, assign her to a different location or spare Conde any discipline).  (Compl. ¶¶ 19, 46, 51-52).  *See Gonzalez*, 2010 WL 3766964 at *3 (finding no joint employer relationship where defendant DOT requested that plaintiff no longer be assigned as a guard at its facilities after being caught sleeping on the job and defendant AlliedBarton made the final decision about the decision whether the transfer or terminate plaintiff).

The Complaint's stray allegations regarding Saks are insufficient to demonstrate a joint employer relationship between Saks and Sisley, and therefore all claims against Saks should be dismissed.  *See, e.g., Kilkenny v. Greenberg Traurig, LLP*, No. 05-CV-6578 (NRB), 2006 WL 1096830 at *4 (S.D.N.Y. Apr. 26, 2006) (granting motion to dismiss and finding that plaintiff could not establish a joint employer relationship where plaintiff was terminated pursuant to a

review process by defendant Greenberg Traurig and where plaintiff was required to report defendant Morgan Stanley's office only after notification of defendant Greenberg Traurig).

## II.   THE COMPLAINT FAILS TO PLEAD THAT SAKS ENGAGED IN ANY UNLAWFUL CONDUCT TOWARDS CONDE

Assuming *arguendo* that Conde has pled adequate facts that Saks was her employer, or had a single or joint employer relationship with Sisley, there is not one factual allegation in the Complaint that Saks engaged in any discriminatory or retaliatory conduct, or even was aware of any alleged discriminatory conduct by Conde's coworkers or Conde's own alleged protected activity.  Conde alleges that she was (1) discriminated against on the basis of her race and (2) retaliated against for engaging in protected activity.  Each claim, however, suffers from a fatal flaw with regards to Saks: specifically, that Conde failed to plead that Saks participated in and therefore may be held liable for any of the alleged unlawful conduct.

Conde's claims under Section 1981, Title VII, the NYSHRL and the NYCHRL shall be addressed together, since the analyses applicable to these statutes parallel each other.  *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 560 n.1 (2d Cir. 2000) (consideration of claims under NYSHRL and NYCHRL parallels Title VII); *Hargett v. Nat'l Westminster Bank, USA*, 78 F.3d 836, 838-839 (2d Cir. 1996) (Title VII analysis applies to Section 1981 claim).

### A.   Conde Has Not Pled Facts Alleging that Saks Discriminated Against Her, and Joint Employer Status Alone Is Insufficient to Impute Liability to Saks

Where a plaintiff claims that she was discriminated against by a supervisor, knowledge of that conduct is imputed to the employer.  *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004).  Here, Conde alleges that Dugre, her immediate supervisor and an employee of Sisley, discriminated against her on the basis of her race and national origin.  She does not, however, include any allegations which could plausibly demonstrate that Dugre was employed by Saks.

14

The extent of Conde's allegations with regard to Dugre's connection to Saks is the conclusory statement that she was an employee of Saks because Saks held the same or similar control over her as it did Conde. (Compl. ¶¶ 11, 29). This allegation is wholly deficient and should not be credited. *See Lans*, 1997 WL 313162 at *5. Just as Conde failed to plead that Dugre was employed by Saks, so too does she fail to plead that any Saks employee had knowledge of any alleged discrimination by Dugre or Sisley, or otherwise was responsible for any alleged discrimination.

Dugre's status as a supervisory employee for Sisley, in itself, provides no basis for a conclusion that Saks would be liable for her actions, even as a purported employee of Saks. There is no allegation or factual basis for a conclusion that she acted at Saks' behest with respect to any allegedly discriminatory conduct, or that any such actions were taken within the scope of Dugre's authority as a supposed Saks, rather than Sisley, employee. Significantly, Dugre I alleged to have commented that "Defendant SISLEY "wanted more blonde girls to represent the company," with no reference to Saks. (Compl. ¶ 32). Conde also alleges that "Defendant SISLEY did nothing in response to Plaintiff CONDE's complaints," absolving Saks of any knowledge of or responsibility for the alleged discriminatory conduct. (Compl. ¶ 43) (emphasis added). The Complaint also is devoid of any allegation that Dugre communicated information to Saks regarding her activities with respect to Conde.

Even if the Complaint was found to contain sufficient allegations to establish Saks as a joint employer of Conde and Dugre, which Saks denies, Saks could not be held liable for actions that it did not participate in, or of which it had no knowledge based solely on its purported status as a joint employer. In *Lima v. Addeco*, *supra*, plaintiff worked as an after-school instructor in a program where he was supervised by defendant Platform, but secured the position through, and

was paid by, defendant Addeco.  *Lima*, 634 F. Supp.2d at 396-397.  Because Addeco represented itself as plaintiff's employer for tax and immigration purposes, acknowledged plaintiff's status as its employee and paid plaintiff (none of which apply to Conde and Saks), the court found that questions of fact existed as to Addeco's status as plaintiff's employer.  *Id.* at 401.  Despite this finding, the *Lima* court opined that "[e]ven where two companies are deemed a joint employer, however, it is not necessarily the case that both are liable for discriminatory conduct in violation of Title VII."  *Id.* at 400.  It went on to hold that Adecco could not be held liable, even as a joint employer, for alleged discrimination where it had no apparent knowledge of any discriminatory comments or other discriminatory treatment until after plaintiff's termination.  *Id.* at 402.

In the instant matter, there is no allegation in the Complaint that Saks knew or should have known about any of the alleged discrimination or retaliation.  Instead, Conde alleges only that she complained of discriminatory treatment of customers to a Sisley Account Coordinator and to Dugre, that Sisley took no action in response to her complaints, and Conde makes no allegation that Saks was aware of or held any retaliatory motive in connection with, or that Saks played a decisive role in, her suspension by Dugre.  (Compl. ¶¶ 39, 43, 46).  Therefore, because Conde failed to plead that any Saks employee had any role in alleged discriminatory conduct towards Conde, or that Saks had knowledge of such conduct, she fails to state a discrimination claim against Saks.

### B.   Conde Failed to Plead Facts Alleging that Saks Retaliated Against Her

Conde claims that she was constructively discharged in retaliation for her complaints regarding the alleged discriminatory sales practices of another Sisley employee.  In order to establish a *prima facie* case of retaliation, Conde must demonstrate that "(1) she had engaged in a protected activity of which the defendant was aware, (2) she was subject to an adverse

employment action, and (3) there was a causal nexus between the protected activity and the adverse action taken." *Jute v. Hamilton Sundstrand Corp.,* 420 F.3d 166, 173 (2d Cir. 2005). Here, Conde fails to plead any facts which could plausibly demonstrate that Saks was aware that she engaged in any alleged protected activity.

The Complaint alleges that Conde reported the alleged discriminatory sales practices to Sisley's Account Coordinator and later to Dugre.  (Compl. ¶¶ 39, 43).  At no point in the Complaint does Conde allege that she informed any Saks employee of her alleged protected activity, or plead any other facts which could plausibly demonstrate that Saks was aware of her complaints.  Therefore, although Conde alleges that Saks "substantively terminated her," this alleged action on the part of Saks could not be retaliatory since Conde failed to allege that Saks was aware of any alleged protected activity, much less that any action by Saks was based upon it. *See Callahan v. Consol. Edison Co. New York, Inc.*, 187 F. Supp. 2d 132, 138 (S.D.N.Y. 2002) (motion to dismiss plaintiff's retaliation claim granted where she failed to plead that defendant had any knowledge of her alleged protected activity).  It is Conde's own allegation that Saks' personnel requested that she no longer work in the Store around the time of a report that Conde had insulted customers, with no allegation regarding any basis for Saks' request or mention of any previous protected activity by Conde.  (Compl. ¶ 46).

Conde's claim that Saks "substantively terminated her" by requesting that Sisley remove her from the Store also fails to create a basis for liability because she does not allege that Saks personnel were responsible for the decisions or actions that constituted her alleged constructive discharge.  Rather, Sisley required Conde to sign a final warning and transferred her to Sisley's location in Bloomingdale's, which she alleges constituted "a demotion and significant decrease in pay" and drove her to inform Sisley that "she felt she had no choice but to resign from her

17

position."  (Compl. ¶¶ 51-55).  Conde did not resign due to any actions by Saks, or even after

being sent home by Dugre on August 22, 2010, but quit only upon her conversation with Sisley's

Human Resources Director on August 28, 2010.  *Id.*  Saks therefore is not alleged even to have

"constructively" terminated Conde, notwithstanding the Complaint's generic and conclusory

reference to "Defendants" in connection with Conde's alleged constructive discharge, which is

neither factual nor entitled to a presumption of truth.  (Compl. ¶ 59).

Conde's failure to allege that Saks engaged in any retaliatory conduct is reinforced by her

EEOC Charge, which does not name Saks as a respondent or allege any wrongdoing by Saks.[3]

In the Charge, Conde states that Sisley "removed [her] from [her] position as a sales associate as

Saks Fifth Avenue [sic] . . . and is trying to assign me to the Bloomingdale's location."  Wigdor

Decl. Ex. B.  Conde goes on to allege that she "believe[s] that the real why [sic] [she was

transferred] is because [Sisley] did not like the fact that [she] reported unethical and

discriminatory behavior."  *Id.*  Conde has expressly alleged in both her Complaint and EEOC

Charge that the decision to transfer her to Bloomingdale's was made by Sisley only, and that

alleged retaliatory motive for the transfer could only have been held by Sisley.  Furthermore,

even if Saks was found to be a joint employer with Sisley, this alone would not be sufficient for

---

[3]      When contemplating a motion to dismiss, judges may take judicial notice of facts in

publicly filed documents, such as charges filed with the EEOC.  *See Day v. Distinctive Pers.,*

*Inc.*, 656 F. Supp. 2d 331, 332 n.2 (E.D.N.Y. 2009) ("In deciding motions to dismiss

employment discrimination actions under Title VII, courts regularly take notice of EEOC and

NYDHR filings and determinations relating to plaintiff's claims."); *Lindner v. Int'l Bus.*

*Machines Corp.*, No. 06-CV-4751 (RJS), 2008 WL 2461934 at *1 n.1 (S.D.N.Y. June 18, 2008)

(finding that "the Court may take judicial notice of EEOC filings relating to plaintiff's claims").

Saks to be held liable for employment decisions in which it played no role.  Therefore, Conde's retaliation claims against Saks must be dismissed.

### C.   The Complaint Does Not Plead Sufficient Facts to Establish Constructive Discharge

Conde further alleges that she was constructively discharged based on her race and national origin.[4]  In the Second Circuit, however, the standard for a constructive discharge claim is very high.  In order to plead that she was constructively discharged, Conde must show that Saks "intentionally created a work atmosphere so intolerable that [the employee was] forced to quit involuntarily."  *Miller v. Praxair, Inc.*, 408 F. App'x 408, 410 (2d Cir. 2010) *cert. denied*, 131 S. Ct. 3067 (U.S. 2011); *Stetson v. NYNEX*, 995 F.2d 355, 360-61 (2d Cir. 1993) (quoting *Pena v. Brattleboro Retreat*, 702 F.2d 322, 324 (2d Cir. 1983)).  "The fact that an employee 'feels that the quality of his work has been unfairly criticized,' or that her working conditions were 'difficult or unpleasant,' is insufficient to support a constructive discharge claim."  *Nugent v. St. Luke's/Roosevelt Hosp. Ctr.*, No. 05-CV-5109 (JCF), 2007 WL 1149979 at *14 (S.D.N.Y April 18, 2007), *aff'd sub nom. Nugent v. St. Lukes-Roosevelt Hosp. Ctr.*, 303 F. App'x 943 (2d Cir. 2008).

Any claims against Saks based upon Conde's alleged constructive discharge fail because: (1) she fails to allege that Saks engaged in any deliberate conduct based upon her race or national origin; and (2) she cannot state a prima facie case for constructive discharge, which requires

---

[4]      The exact nature of Conde's claim for constructive discharge is unclear and Conde makes no attempt to set forth the basis for her claim.  For purposes of this motion only, Saks will assume that Conde's claim is based either on alleged race or national origin discrimination by Dugre, or on Sisley's allegedly retaliatory decision to transfer Conde to Bloomingdale's.

deliberate conduct by the employer which would force any reasonable individual to resign.  Even if it was possible to impute liability to Saks, which it is not, Conde's constructive discharge allegations are based primarily upon: (1) Sisley's decision to transfer her to Bloomingdale's, a position that allegedly would result in a reduction in earnings; (2) alleged stray comments by Dugre regarding race or national origin; and (3) the heightened scrutiny to which she was subjected to by Dugre and through the final warning issued to her by Sisley's Human Resources Director.  Conde's allegations therefore are insufficient establish constructive discharge as a matter of law.  *See Dean v. Westchester County Dist. Attorney's Office*, 119 F. Supp. 2d 424, 431 (S.D.N.Y. 2000) (motion to dismiss granted on constructive discharge claims involving demotion and reduction in pay where the discrimination allegations were too vague to determine whether a reasonable person would feel compelled to resign).  Conde also failed to plead that Saks engaged in or was aware of any discriminatory conduct towards her, and therefore cannot demonstrate that Saks intentionally created an intolerable work atmosphere.  Furthermore, it is nonsensical that Saks would take action to force Conde to resign from Sisley when Sisley already had suspended Conde and was in the process of reassigning her to Bloomingdale's.

The facts in the instant case are analogous to those in *Costa v. City of New York*, 546 F. Supp. 2d 117 (S.D.N.Y. 2008), in which the plaintiff alleged constructive discharge in part because he was transferred to a precinct with a longer commute, was reassigned to a shift that involved a ten percent loss in salary, and was subjected to enhanced scrutiny on the job.  546 F. Supp. 2d at 119.  In granting defendant's motion to dismiss plaintiff's constructive discharge claim, the *Costa* court noted that a constructive discharge claim cannot be established "simply through evidence that an employee was dissatisfied with the nature of his assignments."  *Id.* at 119-120.  *See also Murdaugh v. City of New York*, No. 10-CV-7218 (HB), 2011 WL 798844

(S.D.N.Y. Mar. 8, 2011) *reconsideration denied*, No. 10-CV-7218 (HB), 2011 WL 1991450 (S.D.N.Y. May 19, 2011) (granting defendant's motion to dismiss on constructive discharge claim where no intentional or deliberate action to induce resignation is alleged and a significant period of time elapsed during which plaintiff endured the conditions at issue).

Conde fails to allege any deliberate action by Saks to induce her resignation, nor any actions by Saks based upon her race or national origin.  The Complaint's allegations also fall far short of establishing conditions capable of establishing constructive discharge as a matter of law.  Therefore, all of Conde's constructive discharge claims against Saks must be dismissed.

## III.    CONDE FAILS TO STATE A CLAIM AGAINST SAKS AS AN AIDER OR ABETTOR

Under the NYSHRL and NYCHRL, an individual or entity may be liable for aiding and abetting unlawful discriminatory conduct where they had "direct, purposeful participation" in the alleged discriminatory conduct.  *Robles v. Goddard Riverside Cmty. Ctr.*, No. 08-CV-4856 (LTS) (JCF), 2009 WL 1704627 at *3 (S.D.N.Y. June 17, 2009).  Additionally, the alleged aider and abettor must "share a community of purpose" with the principal actor.  *Id.*; *see also Brice v. Sec. Operations Sys., Inc.*, No. 00-CV-2438 (GEL), 2001 WL 185136 at *4 (S.D.N.Y. Feb. 26, 2001) ("Aiding and abetting liability requires that the aider and abettor 'share the intent or purpose of the principal actor, and there can be no partnership in an act where there is no community of purpose.'") (internal citations omitted).

Conde does not, and cannot, claim that Saks' actions fulfill either requirement for an aiding and abetting claim under the NYSHRL and NYCHRL.  First, Saks did not participate in any of the alleged discriminatory conduct, nor was any Saks employee involved in the decision to transfer her to Bloomingdale's or issue a final warning to her.  Second, the Complaint does not contain any allegations regarding the state of mind of Saks or any shared animus between Saks

and other defendants.  In fact, although Conde alleges that Saks "substantively terminated her," the Complaint states only that Saks did so right around the time of a meeting in which Conde was accused of insulting customers.  (Compl. ¶ 46).  Therefore, by Conde's own admission, Saks did not share a community of purpose with Sisley or Dugre, whom Conde alleges constructively terminated her in retaliation for raising complaints regarding the alleged discriminatory sales practices of a Sisley employee.  (Compl. ¶¶ 51-54).  The Complaint states that the decision to transfer her to Bloomingdale's, the decision which she alleges constituted a retaliatory, constructive discharge, was made by Sisley's Human Resources Director and that Saks played no role in this decision.  *Id.*

As a result, Conde's aiding and abetting cause of action must be dismissed because she fails to plead any facts which plausibly demonstrate purposeful involvement by Saks in the alleged discriminatory and retaliatory conduct, and fails to include any facts revealing a community of purpose between Saks and the alleged unlawful actors.  *See Robles*, 2009 WL 1704627 at *3 (motion to dismiss granted where plaintiff "proffer[ed] neither facts demonstrating any participation by any such defendant in [the] discharge decision nor any facts indicative of any discriminatory motivation in connection with the [] decision to deny Plaintiff's grievance").

## IV.   CONDE FAILED TO SATISFY THE ADMINISTRATIVE REQUIREMENTS FOR FILING A TITLE VII CLAIM AGAINST SAKS

In addition to the foregoing, which demonstrates that Conde cannot state a claim against Saks under any of the causes of action listed in the Complaint, her claims under Title VII claim must fail for the additional reason that Saks was not named as a respondent in Conde's EEOC

Charge.[5]  In order for a court to have subject matter jurisdiction over a claim brought under Title

VII, a plaintiff is first required to file an administrative charge with the EEOC and receive a

notice of Right to Sue.  *See Johnson v. Palma*, 931 F.2d 203, 210 (2d Cir. 1991); *Rosario v.*

*Potter*, No. 07-CV-5891 (SCR) (GAY), 2009 WL 3049585 at *8 (S.D.N.Y. Sept. 23, 2009) ("a

plaintiff alleging a Title VII claim 'may bring suit in federal court only if ... the current defendant

[was] named as a defendant in the EEOC complaint'"); *Kilkenny*, 2006 WL 1096830 at *3

("[u]nder [] Title VII . . . , a claimant may bring suit in federal court only if [he] has filed a

timely complaint with the EEOC and obtained a right-to-sue letter.  In addition, the current

defendant must have been named as a defendant in the EEOC complaint."); *see also Legnani v.*

*Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) ("Exhaustion of

administrative remedies through the EEOC is 'an essential element' of the Title VII and ADEA

statutory schemes and, as such, a precondition to bringing such claims in federal court.").

In the instant matter, Conde filed the requisite charge with the EEOC and received her

notice of right to sue on May 9, 2011.  (Compl. ¶¶ 4-6).  Conde's EEOC Charge, however,

named only Sisley as a Respondent and not only failed to include Saks as a respondent, but also

failed to allege that Saks took any actions with regard to her employment with Sisley.  Wigdor

Decl. Ex. B.  As such, Conde's claims under Title VII must be dismissed due to her failure to

name Saks as a respondent in her EEOC charge and exhaust her administrative remedies.  *See*,

---

[5]      In addition to failing to name Saks in her EEOC Charge, Conde also neglected to serve

her Complaint on the New York City Commission on Human Rights and the Office of

Corporation Counsel as required by § 8-502 of the New York City Administrative Code.  This

alone is grounds for dismissal of Conde's NYCHRL claims.  *See Gray v. Shearson Lehman*

*Bros.*, 947 F. Supp. 132, 137 (S.D.N.Y. 1996).

*e.g.*, *Hunt v. Pritchard Indus., Inc.*, No. 07-CV-0747 (AJP), 2007 WL 1933904 at *6 (S.D.N.Y. July 3, 2007) (dismissing complaint as against union defendant where plaintiff failed to name it as respondent in EEOC charge); *Manos v. Geissler*, 377 F. Supp. 2d 422, 426 (S.D.N.Y. 2005) (dismissing plaintiff's Title VII cause of action where defendant was not named in the EEOC Charge); *Darden.*, 191 F. Supp. 2d at 389 ("As a general rule, a court lacks jurisdiction to hear a civil action against a party that was not already named in an EEOC charge.").

Conde's failure to name Saks as a respondent in her EEOC Charge only further illustrates how inclusion of Saks as a defendant in the instant matter is unjustified based upon the facts and is only being used by Conde to increase leverage in litigation.  Therefore, due to this failure to fulfill administrative requirements, Conde's Title VII claims against Saks must be dismissed.

<u>**CONCLUSION**</u>

For all the foregoing reasons, Defendant Saks respectfully requests that Plaintiff's Complaint be dismissed as to all the claims against Saks.

Dated: November 4, 2011
     New York, New York

Respectfully submitted,

**THOMPSON WIGDOR LLP**

By: _____
    Douglas H. Wigdor
    Lawrence M. Pearson

85 Fifth Avenue
New York, New York 10003
Tel: (212) 257-6800
Fax: (212) 257-6845
dwigdor@thompsonwigdor.com
lpearson@thompsonwigdor.com

*COUNSEL FOR DEFENDANT SAKS*
*INCORPORATED*